UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TYRONE WINDER<br>2301 PENTLAND DRIVE, APT 312<br>BALTIMORE, MD 21234<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL RAILROAD PASSENGER<br>CORPORATION, D/B/A AMTRAK<br>Serve On:<br>AMTRAK LEGAL DEPARTMENT<br>60 Massachusetts Avenue, N.E.<br>Washington, D.C. 20002<br><br>    Defendant. | Civil Action No.: |

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, Tyrone Winder, by and through counsel, Michael H. Feldman, Esq., and Berman, Sobin, Gross, Feldman & Darby LLP, sues National Railroad Passenger Corporation, D/B/A Amtrak for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 and for causes of action states as follows:

### INTRODUCTION

1. Plaintiff Tyrone Winder was a resident of Baltimore, Maryland at all times pertinent herein.

2. Defendant National Railroad Passenger Corporation, D/B/A Amtrak ("Amtrak"), is a railroad corporation and was at all times relevant to the events described in this Complaint doing business within the jurisdiction of this Court, engaging in the carrying of freight and passengers for hire between and through the several States of the United States.

3. This Court has subject matter jurisdiction in this case pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109(d)(3) (FRSA).

4. At the time of the Defendant's FRSA violations, the Plaintiff was employed by the Defendant Railroad and qualified as an employee within the meaning of 49 U.S.C. § 20109.

5. This Complaint arises out of a violation of the Federal Rail Safety Act, 49 U.S.C. § 20109. On April 29, 2014, a Complaint was filed by the undersigned on Mr. Winder's behalf with the United States Department of Labor – Occupational Safety and Health Administration (OSHA). (*See* OSHA Acknowledgement of Complaint Filed, Attached as Exhibit A). An Amended Complaint was then filed with OSHA on or around September 12, 2014. (*See* Amended Complaint, Attached as Exhibit B).

6. Mr. Winder reported, in good faith, a hazardous safety or security condition on the following dates: January 29, 2014; February 13, 2014; and February 23, 2014.

7. Specifically, on January 29, 2014, Plaintiff reported his concerns about having only one electrician working during the Sunday day shift to Foreman Larry Fletcher. Particularly, Plaintiff expressed concern that it was difficult for one electrician to perform all of the necessary tests, inspections, and repairs required in order to prevent injury and to prevent unsuitable trains from leaving the station with passengers. Plaintiff also expressed concern that a single electrician is often times isolated and forced to rush through jobs, placing himself and the general public in danger. Foreman Fletcher appeared irritated and hostile after Plaintiff reported his safety concerns.

8. A few days later, the Plaintiff received a Notice of Intent to Impose Discipline, which was dated January 29, 2014 – the very same day which he first voiced his safety concerns. The Notice indicated that Plaintiff was being disciplined for an alleged violation that had occurred seventeen (17) days prior, on January 12, 2014. (*See* Exhibit C, attached hereto). There was no discussion, notice, or conversation about this alleged "violation" until Plaintiff vocally expressed his safety concerns to Foreman Fletcher.

9. The following week, on February 5, 2014, Foreman Fletcher confronted Plaintiff in front of several co-workers and informed the group that the weekend electricians had been complaining about the job and that any employee who had a problem could "bid off" or have his job abolished. Foreman Fletcher further informed the group that he did not want to hear any more about the safety issues concerning the weekend shifts.

10. On February 13, 2014, Plaintiff again reported his safety concerns regarding the weekend day shifts, this time to General Foreman Andrew Thorn. After a lengthy discussion, General Foreman Thorn said that he would get back to Plaintiff.

11. On February 23, 2014, Plaintiff sent an e-mail to Foreman Fletcher and Foreman Darrell Ritchie again reporting his safety concerns regarding the weekend day shifts. (*See* Exhibit D, attached hereto).

12. On February 26, 2014, Plaintiff applied for Family and Medical Leave Act ("FMLA") coverage. (*See* Exhibit E, attached hereto). Plaintiff's application was approved on March 6, 2014. (*See* Exhibit F, attached hereto).

13. Following Plaintiff's reports of safety concerns, he began to feel targeted by his supervisors, in particular, Foreman Fletcher. Specifically, Plaintiff was informed by Foreman Ritchie that upon reviewing the e-mail, Foreman Fletcher told Foreman Ritchie to forward the e-mail to "everyone" and that he was "going to show him" (referring to Plaintiff). Plaintiff was also told that he could look for alternative employment if he was not happy and that he was not to bring up his safety concerns anymore.

14. On February 19, 2014, Amtrak sent Plaintiff a package which included documentation indicating that he was to appear for a Notice of Intent to Impose Disciple meeting concerning a potential violation of Amtrak's Attendance Policy. (*See* Exhibit G, attached hereto).

15. It was not until Plaintiff first reported, in good faith, hazardous safety conditions to his supervisors, Foreman Fletcher and Foreman Thorn, that his absences were scrutinized.

16. In fact, three of the absences – December 9, 2013; April 16, 2013; and February 2, 2014 – were at the order of a treating physician and documentation was provided to Amtrak. (*See* Exhibit H, attached hereto). The FRSA statute provides that following the orders or a treatment plan of a treating physician is a protected activity, therefore, at least three of these absences are protected under the statute.

17. Plaintiff provided documentation from his treating physician, Dr. Naiman, upon his return to work for the following shift. Each letter indicated that Plaintiff was unable to work on that given date and also provided a date in which he was able to return to work. (Exhibit H).

18. Following an investigatory hearing, which took place on March 5, 2014, Plaintiff was suspended for thirty (30) days as a result of violating Amtrak's attendance policy. Master Mechanic Michael Bello assessed the discipline on March 19, 2014. (*See* Exhibit I, attached hereto).

19. Amtrak's disciplinary policy is progressive in nature and follows steps. (*See* Exhibit J; attached hereto) In the instant matter, Master Mechanic Bello skipped several steps and gave Plaintiff a thirty (30) day suspension. There was no verbal counseling or written counseling and Plaintiff did not receive a reprimand or suspension of three (3) days or less. The unnecessary and excessive punishment was in retaliation for Plaintiff's actions of raising safety concerns and using his approved FMLA.

20. Plaintiff appealed his suspension to Amtrak Labor Relations on March 24, 2014. That same day, Master Mechanic Michael Bello reduced the suspension because he found it to be "excessive" and reduced the discipline to four days served and six days held in abeyance. Labor Relations upheld the decision and denied Plaintiff's appeal. (*See* Exhibit K, attached hereto).

21. While at work on April 4, 2014, Plaintiff was informed by Leslie White that Foreman Fletcher had showed her the e-mail raising safety concerns, which was sent by Plaintiff on February 23, 2014. (*See* Exhibit D) Ms. White informed Plaintiff that Foreman Fletcher was upset and resented the fact that Plaintiff had sent the e-mail.

22. On April 11, while Plaintiff was on vacation, he received a telephone call from Joe Petcholan. Mr. Petcholan indicated that Foreman Fletcher had directed Foreman Ritchie to start finding reasons to write up Plaintiff for disciplinary issues. Foreman Fletcher also discussed abolishing Plaintiff's job by changing the dates of work

to include Fridays. Plaintiff's religious practices, as Foreman Fletcher is aware, prevent him from working on Fridays.

23.    On April 14, 2014, Plaintiff received a written warning for a Blue Flag protection violation. Plaintiff was working alongside his partner, Larry Simmons, when the alleged violation occurred. However, Plaintiff's partner did not receive the written warning. Plaintiff was singled out in retaliation for raising safety complaints with his supervisors and the actions of Foreman Fletcher were an excuse to impose discipline. (*See* Exhibit L, attached hereto).

24.    Plaintiff spoke with Foreman Ritchie on April 14, 2014. Foreman Ritchie indicated that he was ordered by Foreman Fletcher to start writing up Plaintiff and that if he did not comply, Foreman Ritchie would start to receive write-ups himself. Foreman Ritchie expressed that he did not want to be part of Foreman Fletcher's actions.

25.    On April 15, 2014, Foreman Thorn verbally counseled and warned Plaintiff about using his approved FMLA. Foreman Thorn asked Plaintiff to use his FMLA in a manner which was not in line with his approved FMLA and not in line with Amtrak's Maintenance/Locomotive Department mark-off policy. Foreman Thorn further stated that if Plaintiff did as was requested with his FMLA, the discipline actions against him would stop and that if he did not abide, there would be continued write-ups in the future.

26.    As a result of Defendant Amtrak's conduct, Mr. Winder suffered various economic harms as well as emotional distress and mental anguish

## COUNT I – Violation of Federal Rail Safety Act

27. Plaintiff adopts and incorporates by reference all the facts and allegations contained in Paragraphs 1-26 above.

28. The Plaintiff engaged in protected activity under the FRSA when he reported, in good faith, hazardous safety or security conditions and when he followed the orders or a treatment plan of a treating physician.

29. Defendant AMTRAK had knowledge of all the protected activities referenced above.

30. Defendant AMTRAK took adverse or unfavorable actions against Mr. Winder in whole or in part due to his protected activities when it suspended and assessed other discipline to Mr. Winder. In so doing, Defendant AMTRAK acted with reckless disregard for the law and with complete indifference to the Plaintiff's rights under the FRSA.

31. On April 29, 2014, Mr. Winder filed a FRSA Complaint with the Secretary of Labor's Region 3 OSHA Whistleblower Office. This Complaint was timely filed within 180 days from the date Mr. Winder became aware of AMTRAK's intent to take adverse or unfavorable personnel action against him.

32. The Region 3 OSHA Whistleblower Office commenced its investigation, and Mr. Winder fully cooperated with OSHA's investigation. However, OSHA did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the Plaintiff Mr. Winder.

33. Pursuant to FRSA 49 U.S.C. § 20109(d)(3), the Plaintiff has a statutory right to bring an original action in a United States District Court for a jury trial regarding the Railroad's violations of the FRSA.

34. On December 3, 2014, Plaintiff filed with the Region 3 OSHA Whistleblower Office a Notice of Intent to File Original Action. (*See* Attached Exhibit M).

35. Pursuant to FRSA 49 U.S.C. § 20109(d)(3), Plaintiff is now bringing this original action at law and equity for de novo review by the United States District Court for the District of Columbia, which Court has jurisdiction over this FRSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage employees to freely report, in good faith, hazardous safety or security conditions and to freely report all injuries without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the Plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to:

    a. Expungement of all references to disciplinary action related to the discrimination;

    b. Reinstatement with the same seniority status the Plaintiff would have had but for the discrimination;

    c. Lost benefits with interest;

    d. Lost wages with interest;

e. Compensatory damages for medical expenses incurred due to Defendant's conduct;

f. Compensatory damages for economic losses due to Defendant's conduct;

g. Compensatory damages for mental anguish and emotional distress due to Defendant's conduct;

h. The statutory maximum of punitive damages pursuant to 49 U.S.C. § 20109(e)(3);

i. Special damages for all litigation costs including expert witness fees and attorney fees; and

j. All other relief necessary to make the Plaintiff whole.

## PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted,

/s/Michael H. Feldman
MICHAEL H. FELDMAN (Bar # 01473)
Berman, Sobin, Gross, Feldman
& Darby LLP
1301 York Road, Suite 600
Lutherville, Maryland 21093
410-769-5400
mfeldman@bsgfdlaw.com

*Attorneys for Plaintiff*